No. 87-312

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

WILLIAM G. HARRIS,

    Petitioner and Appellant,

    -vs-

GENEVIEVE BAUER, Superintendent of
Schools, Yellowstone County, Montana,
Sitting for Sonja Spannering, Superin-
tendent of Schools, Park County, Montana,
and LIVINGSTON SCHOOL DISTRICTS NO. 1 & 4,
Park County, Montana and ED ARGENBRIGHT,
State of Montana, Superintendent of Public
Instruction,

    Respondents and Respondents.

APPEAL FROM:  The District Court of the Sixth Judicial District,
              In and for the County of Park,
              The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Berger, Nelson & Gai; Arnold A. Berger, Billings,
        Montana

    For Respondents:

        Richard P. Bartos, Office of Public Instruction,
        Helena, Montana
        Felt & Martin; Laurence R. Martin, Billings, Montana

Submitted on Briefs:  Oct. 22, 1987

Decided:  January 19, 1988

Filed:  JAN 1 9 1988

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiff appeals from an order of the District Court, Sixth Judicial District, Park County, affirming the decision of the acting county superintendent and the State Superintendent of Public Instruction reducing plaintiff's award of back pay by amount of summer earnings; awarding 6% interest rate per annum on award of back pay; and denying plaintiff's attorneys fees. We affirm in part and reverse and remand in part.

William Harris raises the following issues on appeal:

1. Did the District Court err in affirming the acting county superintendent and the State Superintendent of Public Instruction's decision to deduct plaintiff's summer earnings from the award of back pay?

2. Did the District Court err in affirming the decision of the acting county superintendent and the State Superintendent of Public Instruction that Harris is entitled to an interest rate of 6% per annum on his back wages and benefits?

3. Did the District Court err in affirming the decision of the acting county superintendent and the State Superintendent of Public Instruction in refusing plaintiff attorney fees?

The record reveals the following pertinent facts. Harris was employed by the Livingston School District as a school psychologist from the beginning of the 1973-74 school year through to April 15, 1981. In April 1981 Harris was notified of his dismissal from employment by a letter from the Board of Trustees. Harris requested a statement in writing from the Board regarding the reasons for his

- 2 -

termination. The Board did not furnish Harris with a written statement delineating the reasons for his termination but rather referred him to the Park County attorney. Harris appealed the decision of the Board to the Park County Superintendent of Schools pursuant to § 10.6.101, A.R.M.

The acting county superintendent affirmed the Board of Trustee's determination that Harris did not have tenure and could be dismissed at will. The State Superintendent affirmed the decision of the acting county superintendent. However, on review, the District Court reversed the acting county and state superintendent on the question of tenure. The District Court found that Harris had tenure and ordered reinstatement and back pay. This Court in Harris v. Bauer (Mont. 1983), 672 P.2d 26, 40 St.Rep. 1793, remanded the case to the District Court to determine whether discharge was appropriate in light of this court's finding that Harris was a "tenured" teacher and if the discharge was wrongful, the measure of damages.

In November, 1983, the District Court remanded this matter to the county superintendent of schools for Park County for determination of the following issues:

1. Was Harris properly and legally discharged as a tenured teacher?

2. If Harris was improperly discharged, was he still employed by the school district?

3. If Harris was still employed what sums were payable to him as salary?

4. If Harris was still employed by the school district, what sums were payable to the Teacher's Retirement System on his behalf?

5. If Harris was still employed by the school district was he entitled to attorney fees and if so in what amount?

- 3 -

In May, 1985, the acting county superintendent Mike Bowman conducted a subsequent hearing on the matters directed by the District Court. The parties filed an agreed statement of facts as well as written briefs. Both parties presented exhibits, testimony and made oral arguments.

In June, 1985, Bowman found that: Harris' discharge was not proper or legal as it violated § 20-4-207, MCA; the dismissal by the Board was void for want of jurisdiction: The Board in the letter of discharge had not notified Harris of the charges against him in sufficient detail to allow Harris to "formulate a defense": Harris was denied an opportunity to meet the charges prior to dismissal; and the notice itself failed to substantiate a causal relationship between Harris' alleged violations and the performance of his duties. Bowman concluded that procedural defects had tainted the first dismissal action by the school.

On August 12, 1985, the school district filed a notice of appeal before the State Superintendent from the June 9, 1985 findings of fact and conclusions of law and order of the county superintendent of schools, and from the August 8, 1985 order denying the school district's petition for rehearing. On August 16, 1985, Harris filed a notice of cross-appeal alleging errors committed by Bowman in his June 9, 1985 findings of fact, conclusions of law and order and his July 5, 1985 judgment. Harris contended Bowman erred in concluding that: 1) Harris was not entitled to attorney fees, and 2) by reducing Harris' damages by his summer earnings.

In January, 1986, the State Superintendent received the briefs of the parties on all issues and held oral argument. On August 4, 1986, the State Superintendent issued his findings of fact, conclusions of law and order along with an opinion in which he affirmed Bowman's award to Harris of

$110,518.74 plus additional back wages, and benefits accrued since the date of the award. The State Superintendent "asked" for "supplemental requests" so that a "supplemental order" could be issued to cover such wages and benefits.

On September 16, 1986, the State Superintendent issued his judgment. In it, he awarded Harris the sum of $118,192.22 which included Bowman's award and interest on that award of 6% per annum. The judgment reflected the agreement between the parties to the effect that Harris was not entitled to any additional salary or benefits subsequent to July 1, 1985 as a result of the school district's second termination of Harris. This "second termination" is on appeal but is not issue in this case. The State Superintendent affirmed the deduction of Harris' total earnings (which included his summer earnings from the date of his initial termination on April 14, 1981 through July 1, 1985) from his award of back wages. Both parties were involved in the calculation of damages which included the deduction of total earnings. However, Harris specifically noted the amount of his summer earnings in documents filed with the acting county superintendent and raised the issue immediately in his notice of cross-appeal.

Harris then petitioned the District Court for review of the decision of the State Superintendent. The District Court affirmed the findings of fact, conclusions of law and order of the State Superintendent. Harris now appeals to this Court.

The Montana Administrative Procedure Act (MAPA) is applicable in the present case. Both the acting county superintendent and the state superintendent are found within the definition of an agency as defined by MAPA. Sections 2-4-102, 2-3-102, MCA, Yanzick v. School District No. 23, Etc. (1982), 196 Mont. 375, 641 P.2d 431.

- 5 -

The present case constitutes a "contested case" under MAPA.

> Contested case means any proceeding before an agency in which a determination of legal rights, duties or privileges of a party is required by law to be made after an opportunity for hearing . . ..

Section 2-4-102(4), MCA.

The standard of judicial review in contested case proceedings is delineated in § 2-4-704, MCA, which provides:

> <u>Standards of review</u>. (1) The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency not shown in the record, proof thereof may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.
>
> (2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> (c) made upon unlawful procedure;
>
> (d) affected by other error of law;
>
> (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
>
> (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

- 6 -

(g) because findings of fact, upon issues essential to the decision, were not made although requested.

In Johnson v. Bozeman School District No. 7 (Mont. 1987), 734 P.2d 209, 211, 211-212, 44 St.Rep. 531, 534, this Court held:

Findings of fact by an administrative agency are subject to the "clearly erroneous" standard of review. However, conclusions of law are subject to the "abuse of discretion" standard of review, where the scope is broader.

This Court further expounded on the subject in City of Billings v. Billings Firefighters (1982), 200 Mont. 421, 430, 651 P.2d 627, 632, wherein the Court stated:

Those standards differ due to an agency's expertise regarding the facts involved and the court's expertise in interpreting and applying the law.

The appellant asserts that it was error for his award to be reduced by the amount of his summer earnings during the period in question. We agree.

"Section 2-4-702(1)(b), MCA indicates that issues brought before the agency proceeding automatically become subject to judicial review." Sorlie v. School Dist. (Mont. 1983), 667 P.2d 400, 402, 40 St.Rep. 1070, 1073. Evidence concerning the issue regarding set-off of summer wages was before the agency. The plaintiff presented a statement of his earnings to the hearings officer dividing summer and school year earnings and as such the issue was raised before the agency at the initial hearing. Once judgment was rendered, appellant filed notice of cross-appeal raising the reduction of his award by his summer earnings as an issue. The issue of whether the plaintiff's award should be reduced by his summer earnings is properly before this Court.

The amount of money appellant would have received in salary and benefits under his teaching contract had he not been wrongfully discharged is a question of fact, as is the amount of income the plaintiff earned during the period in question. However, the question of whether the appellant's back pay should be reduced by his summer earnings is clearly a question of law.

The hearings examiner arrived at Harris' award by adding his annual contract benefits and salary that he would have received for the time period in question had he not been wrongfully discharged. (Harris' annual compensation was based upon a nine month teaching year.) The county superintendent then reduced this amount by the appellant's total earnings during this same period. This was done despite the fact that plaintiff presented the acting county superintendent with a statement of earnings that separated income earned during the nine month school year and income earned during the summer.

The appellant derived his replacement income by building fireplaces. The work was seasonal and as such most of the work occurred during the summer months. These summer months were not covered by the appellant's nine month contract. Had the appellant not been wrongfully discharged; he would have been able to maintain both employments. Clearly his summer employment would not have interfered with his position as a school psychologist.

The purpose of the award in this case is to make the plaintiff whole and compensate him for the salary and benefits he would have received had he not been wrongfully discharged. There is no question but that many teachers by choice or necessity supplement their salaries by "moonlighting" or by obtaining summer jobs. There is no evidence to suggest that the appellant's summer activities

would have interfered with his primary responsibilities as a school psychologist. Had appellant not been wrongfully discharged, he would have enjoyed both incomes. We hold that "moonlighting" or second job income should not offset awards of back pay for teachers unless it can be shown that the recipient of the award would have been unable to hold the "other" job at the same time as the job for which he is receiving the back pay. Whateley v. Skaggs Co. (Colo. 1981), 508 F.Supp. 302; Bing v. Roadway Express, Inc. (5th Cir. 1973), 485 F.2d 441.

The respondents assert that the plaintiff should be precluded from questioning the reduction of the award by the appellant's 1982-85 summer wages as plaintiff voluntarily agreed to the figures which were submitted to the acting county superintendent. At the administrative hearing, appellant's counsel was requested to submit information on interest calculations and stated that he would do so. No other requests for information pertaining to damages were made. Respondents have not offered any evidence or case law to support their position that summer wages should be offset against a judgment awarding back pay.

The appellant's award should be increased by $16,328.18, representing the total summer earnings amount previously deducted from appellant's award. The plaintiff is entitled to receive interest at the rate of 6% per annum on this additional award of back pay.

The plaintiff next contends that he is entitled to receive interest in the amount of 10% on his back salary, instead of the 6% interest rate previously awarded him. The record shows plaintiff failed to raise the issue of interest rate before the agency or before the State Superintendent in his cross appeal. The plaintiff has also failed to show good cause why this issue was not raised in a prior proceeding.

As such this Court will not entertain the issue. Section 2-4-702(1)(b), MCA.

Lastly, we address the issue of whether the plaintiff is entitled to attorney fees.

> The general rule on attorney fees is that absent a specific contract provision or statutory grant, the prevailing party is not entitled to an award of attorney fees either as costs of the action or as an element of damage.

Pryor School Dist. v. Supt. of Public Inst. (Mont. 1985), 707 P.2d 1094, 1099, 42 St.Rep. 1405, 1413, citing Martin v. Crown Life Ins. Co. (Mont. 1983), 658 P.2d 1099, 1104, 40 St.Rep. 216, 221.

Appellant states in his reply brief that he ". . . does not rely on contract or other statute authorizing fees except for § 25-10-711, MCA. Section 25-10-711, provides:

> 25-10-711. Award of costs against governmental entity when suit or defense is frivolous or pursued in bad faith. (1) In any civil action brought by or against the state, a political subdivision, or an agency of the state or a political subdivision, the opposing party, whether plaintiff or defendant, is entitled to the costs enumerated in 25-10-201 and reasonable attorney's fees as determined by the court if:
>
> (a) he prevails against the state, political subdivision, or agency; and
>
> (b) the court finds that the claim or defense of the state, political subdivision, or agency that brought or defended the action was frivolous or pursued in bad faith.

In Dept. of Revenue v. New Life Fellowship (Mont. 1985), 703 P.2d 860, 42 St.Rep. 1129, this Court held that § 25-10-711(1)(b), MCA, requires a finding by the court of bad faith or a frivolous action on the part of the state before attorney fees can be awarded to the opposing party. After reviewing the decision of the Superintendent of Public

Instruction, the District Court made findings of fact to the effect that there is no evidence of bad faith on the part of the school district in any of the proceedings. The District Court also found that the school district's actions in defending itself from the plaintiff's appeal from his termination were not pursued in a frivolous manner. The plaintiff has failed to offer any evidence which contradicts these findings of fact. We will not substitute our judgment for that of the District Court absent a finding of arbitrary or capricious conduct. The plaintiff is not entitled to attorney fees.

Reversed and remanded with instructions to amend the judgment for plaintiff in the amount of $16,328.18, plus interest at a rate of 6% per annum.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 11 -