## CHARLESTON.

### STATE v. GEORGE ANDREWS.

Submitted September 26, 1922.   Decided October 10, 1922.

1.  CRIMINAL LAW—SEARCHES AND SEIZURES—*Property of Eviden-
    tial Value Taken from One Accused of Offense of Unlaw-
    ful Search and Seizure Should be Returned; Neither Goods
    Unlawfully Seized Nor Evidence of Persons Making Search
    Admissible.*

    If goods or other property of evidential value be taken
    from one accused of an offense by an unlawful search and
    seizure, the same should, on his application by petition, be
    restored to him, if they be such as he is lawfully entitled to
    have the possession of, and whether so or not, if objected
    to, neither the goods or other property, nor the evidence of
    the officers or persons engaged, obtained thereby should be
    admitted in evidence against the accused on his trial. (p. 726).

2.  CONSTITUTIONAL LAW—*State Constitution Construed in Har-
    mony with Construction of Federal Constitution.*

    The provisions of our constitution relating to unreasonable
    search and seizure and protecting one accused of crime from
    being compelled to be a witness against himself, being sub-
    stantially the same as the corresponding provisions of the
    federal constitution and taken therefrom, should be given a
    construction in harmony with the construction of the federal
    provisions by the Supreme Court of the United States.
    p. 727).

3.  INTOXICATING LIQUORS—*One Indicted for Having in His Pos-
    session Intoxicating Liquor, Entitled to Immunities of
    Statute, May Have Issue Tried as Fact.*

    One indicted for an offense under section 37 of chapter 32A
    of the Code, as amended by chapter 115, Acts 1921, is entitled
    by plea timely presented to interpose as a defense the facts
    entitling him to the immunities granted by the provisos of
    said statute, and to have an issue on the facts averred made
    up and tried by the jury along with the other issues in the
    case. (p. 729).

Error to Circuit Court, Mingo County.

George Andrews was convicted of unlawfully having in his
possession intoxicating liquors, and brings error.

*Reversed and remanded.*

*Goodykoontz, Scherr & Slaven* and *Okey P. Keadle,* for plaintiff in error.

*E. T. England,* Attorney General, *R. A. Blessing,* Assistant Attorney General, and *W. G. Brown,* State Prohibition Commissioner, for the State.

MILLER, JUDGE:

The warrant issued by a justice and upon which defendant was tried and convicted by the justice, and was found guilty by the jury upon appeal to the circuit court, and adjudged to pay a fine of one hundred dollars and be imprisoned in the county jail for thirty days, charges that defendant, on the 25th day of December, 1921, in the said county did unlawfully have in his possession a certain quantity of intoxicating liquors, namely, one quart of red whiskey and one pint of moonshine whiskey, in violation of the laws of the State.

The statute, section 37 of chapter 32A of the Code, as amended by chapter 115, Acts 1921, upon which the warrant was based, including the provisos upon which the defendant in part relies, provides that:

"Any person who has in his possession any quantity of 'moonshine liquor' shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than one hundred dollars nor more than three hundred dollars, and confined in the county jail not less than thirty nor more than ninety days; *provided,* that if any such person shall fully and freely disclose the name or names of any person or persons from whom he received said moonshine liquor, and give any other information that he may have relative to the manufacture and distribution of the same, and shall truthfully testify as to any such matters of information, he shall be immune from further prosecution or punishment; and *provided, further,* that the finding of any quantity of intoxicating

91 W. Va.

liquor in the possession of any person other than com-
mercial whiskeys which were obtained and stored in
houses for domestic use at a time when it was lawful so
to do, shall be *prima facie* evidence that same is 'moon-
shine liquor.' "

What is moonshine liquor must be determined from the
definition given in the statute of a moonshine still from which
such liquor is manufactured. The same section provides:

"For the purposes of this act, any mechanism, appa-
ratus or device that is kept or maintained in any desert,
secluded, hidden, secret or solitary place, away from the
observation of the general public, or in any building,
dwelling-house or other place, for the purpose of dis-
tilling, making or manufacturing intoxicating liquors,
or which by any process of evaporation, separates alco-
holic liquor from grain, molasses, fruit or any other
fermented substance, or that is capable of any such
use, shall be taken and deemed to be a 'moonshine still';
and the owner or operator of such 'moonshine still,'
shall be deemed a 'moonshiner.' "

The promptness with which defendant proceeded in the
circuit court, and which may have a bearing on the questions
to be considered, may be shown by the record. His trial
before the justice took place on January 5, 1922. On the
same day he announced his desire and purpose to appeal to
the circuit court, and entered into a recognizance in the
penalty of $500.00 for his appearance before the judge of
the circuit court on January 9, 1922. We take judicial notice
that that day was the first day of the January term of that
court. The record is silent as to what took place, if any-
thing, prior to January 28, 1922; but by an order entered
on that day it is shown that defendant appeared by counsel,
and the case being called for trial, he asked leave to file his
petition, duly sworn to, which was objected to by the prose-
cuting attorney; but over his objection the petition was
ordered to be filed. Whereupon the defendant moved that
an issue be made upon the facts set up in the petition, which
was resisted by the motion of the State to strike out the

petition. Thereupon the court overruled the motion of the defendant to make up an issue on the matter of the petition and reserved its judgment on the motion to strike out the petition until it should hear the evidence of the State upon the trial on the warrant, to which ruling the defendant excepted.

Whereupon the defendant in person and by counsel appeared and tendered and asked leave to file his plea, duly verified, endorsed "Defendant's Plea in Bar," and based on said section 37 of chapter 32A of the Code, and especially the proviso thereof, to the filing of which plea the State also objected, but its objection was overruled and the plea filed. The defendant then moved the court to make up an issue on the facts presented by the plea, which motion was rejected; and the motion of the State to strike out the plea was also reserved until the court should have heard the evidence of the State upon the trial of the defendant upon the warrant.

The facts in the petition upon which an issue was desired by defendant were: First, that the only evidence introduced before the justice in support of said warrant and the only evidence which would or could be introduced before the court on his appeal to the circuit court consisted of the one quart of red or commercial whiskey and one pint of a liquid substance which petitioner believed was not intoxicating liquor nor moonshine liquor within the meaning of the statute: Second, that the liquor so described was taken from the home and residence of the defendant without a warrant and in his absence and against his will, on December 25, 1921, by one Captain J. R. Brockus, an officer of the State, at that time a member of the Department of Public Safety, and one L. H. McCoy, another officer, who unlawfully seized, took and carried away said liquor contrary to law and in violation of the rights guaranteed to him by the state and federal constitutions; that said liquor and the evidence of the officers in relation thereto is illegal and incompetent evidence against him on his trial on said warrant. And the prayer of said petition is that said liquor be returned to him, and that it be denied the State as evidence upon his trial.

The plea interposed was in effect as follows: that upon defendant's arrest on said warrant and when taken before said justice to answer for the alleged offense, he offered to and did fully and freely disclose to the justice the names of the persons from whom he received the liquor, and did give other information which he had relative to the manufacture and distribution of said liquor, as in said plea alleged, and did truthfully testify as to all said matters of information, to the effect and substance following; namely, that some time prior to January 1, 1919, in the city of Portsmouth, State of Ohio, one Rose Venturino gave him one quart of red liquor specified, which he accepted and conveyed to his home in the city of Williamson, Mingo County, where he deposited the same and where it thereafter remained until it was so unlawfully and illegally seized and carried away by said officers; that defendant did not know of his own knowledge anything relative to the manufacture and distribution of said red liquor, but he was informed by said Venturino, which he then and now believed to be true, that said liquor was commercial whiskey manufactured by a commercial distillery and was distributed lawfully by the distillery through lawful agencies.

That respecting the one pint of liquor designated and described as moonshine whiskey, one Mike Maravelle, in the said city of Williamson gave him said pint of liquor, representing at the time that the same was not intoxicating, but possessed medicinal qualities, and that defendant then believed and still believes said liquor is not moonshine whiskey within the meaning of the statute, but that having no knowledge or information except as set forth in his plea, he makes full and free disclosure thereof and of the facts and matters set forth in his plea, and that he had on his trial before said justice, on January 5, 1922, truthfully and freely disclosed and testified thereto before the justice, and again offered to testify as fully and freely to the same before the court; and prayed the immunity accorded him in the proviso of the statute, and that he be discharged from further prosecution under said warrant.

A decision on the questions which defendant sought to present by his petition and plea; being suspended pending the trial on his plea of not guilty, the court proceeded to hear the evidence of the State, consisting of the oral testimony of Captain Brockus, who entered defendant's home and searched for and seized the liquor, and of Major Thos. B. Davis, the military officer commanding the national guard in Mingo County, and under whom Captain Brockus was acting, pending the proclamation of martial law in that county by the Governor; and the State in connection with the oral testimony of these witnesses, was allowed to introduce in evidence to the jury the liquor so seized, notwithstanding the protests and objection of the defendant thereto. At the close of the State's evidence the defendant moved to strike it out and direct the jury to return a verdict of not guilty, which motion was also overruled. And the court then sustained the State's pending motions to strike out defendant's petition and plea in bar, except as to the one quart of red liquor admitted, which was directed to be turned over to defendant's counsel.

Upon the return of the verdict of guilty by the jury, the defendant moved to set it aside and award him a new trial, and moved the court to arrest judgment thereon, both of which motions were overruled; and the judgment now under consideration was pronounced on the verdict.

As to the manner of the search and seizure of the liquor, the testimony of the witnesses shows that Captain Brockus was sent by Major Davis to defendant's house to inquire into a report that defendant had assaulted his wife, who had been seen on the street with blood on her face and making some sort of outcry; that on reaching defendant's residence and finding the doors open, including the door of the closet in which he swore he found the whiskey, he entered the house without any warrant, either for defendant or for searching the house for liquor; that he found no one in the house and made no arrest of the defendant, but finding the liquor in the closet, he seized it and took it into possession and delivered it over to his superior officer, Major Davis, with

whom it remained until produced at the trial and was admitted in evidence. Captain Brockus also testified that defendant had committed no offense in his presence but that a warrant was subsequently sued out of the office of a justice of the peace by another officer, accusing him of some offense, and on which he was apprehended by another military officer, but which had been dismissed, and that so far as he knew defendant had never been prosecuted upon that warrant.

We have stated at length the facts in the record, to show the different ways by which defendant sought to present his defense. The questions which he sought to present by his petition and plea in bar were presented also by his objections and exceptions to the introduction of the State's evidence, and by his instruction to the jury to find him not guilty, and also by his motion to set aside the verdict and to arrest judgment thereon against him.

The purpose of his petition was to recover the possession of the liquor alleged to have been unlawfully taken from him, and thus prevent its use as evidence against him, in contravention of his constitutional rights. If upon the facts stated in the petition he was entitled to restoration of the liquor, he was entitled to oppose the use of it as evidence against him on the trial. The practice of presenting a petition for the reclamation of papers or property of such evidential value was recognized in the recent case of *Amos* v. *United States,* 255 U. S. 313, supported by the previous case of *Gouled* v. *United States, Id.* 298, and also by the case of *Weeks* v. *United States,* 232 U. S. 383. In the Amos case the objection of the Government was that the petition came too late, presented as it was after the jury had been sworn and the trial begun. This objection was predicated on the rule that in the trial of criminal cases the courts will not stop to frame a collateral issue as to whether the evidence, otherwise competent, was lawfully or unlawfully obtained. In the case at bar the petition was presented before the jury were sworn. If here, as held in the federal cases referred to, the facts in the petition and appearing in the evidence showed an unlawful and unreasonable search and seizure of

the liquor, violative of defendant's constitutional guaranties, it matters not how nor when these facts were presented; the evidence so obtained was incompetent. In the Amos case and in the Weeks case, the court held that the petition should have been granted, and in the Amos case, that having been denied, the motion of the defendant to exclude the evidence should have been sustained. And if the evidence, the liquor in defendant's possession, was obtained by an unlawful search and seizure, and an invasion of his constitutional rights, it was not only error for the trial court to admit it in evidence, but also the testimony of the witnesses respecting the same and the finding of it in defendant's possession, or as to the character thereof.

We have then to determine whether the facts alleged in the petition and shown in the evidence of the witnesses constituted an unlawful search and seizure and an invasion of defendant's constitutional rights, state or federal. Section 6 of Article III of our constitution relating to unreasonable search and seizure is substantially the same as the fourth amendment to the federal constitution; and the last clause of section five of the same article, protecting one in a criminal case from being compelled to be a witness against himself, is substantially the same as the fifth amendment to the federal constitution. These provisions of our constitution were manifestly taken from the federal amendments. Whether these amendments were intended to apply to the actions of the states was a question presented in *Adams* v. *New York,* 192 U. S. 585, as noted by Mr. Justice Day in *Weeks* v. *United States.* But the court went on to dispose of the questions actually in issue upon a writ of error to the judgment of the state court. Whether applicable or not, inasmuch as the provisions of our constitution cover the same subject and are in the exact language of the federal amendments, they ought to receive harmonious construction when applied to the actions of state officers.

In the recent case of *Silverthorn Lumber Company* v. *United States,* 251 U. S. 385, following *Weeks* v. *United States* and other cases, the court held that documents ac-

quired by means of previous unconstitutional search and
seizure planned and executed by its officials under cover of
a void writ, provided the defense of the constitution be
seasonably interposed, and not first raised as a collateral issue
at the trial of the indictment, should not be used as evidence
before the court, nor in any other place where defendant in-
terposes the protection of the constitution; that if the knowl-
edge of such evidence is gained from an independent source,
it may be proved like any other facts, but that knowledge
thereof gained by the State's own wrong can not be used in
the way proposed in this case. In the Silverthorne case de-
fendants had been arrested upon a warrant charging them
with a specific offense. While detained by the officers upon
the charge therein contained, the United States marshal,
without the shadow of authority, went to the office of the
defendant company and seized and carried away all the
books, papers and documents found therein, and directed the
employees to go to the district attorney's office, to which the
books were taken at once. There, as in this case, application
was promptly made to the court for the return of the books
and documents so obtained. An invalid subpoena had been
resorted to in the district attorney's office to give color to the
acts of the marshal. The district court ordered a return of
the originals, but not until after copies and protographs
thereof had been made. The case before the court involved
the alleged contempt of the defendants in failing to produce
the originals before the court, as incriminating evidence. In
*Town of Blacksburg* v. *Beam,* (S. C.), L. R. A. 1916E. 714,
it was decided that one can not be convicted of illegally
transporting liquors in his trunk upon evidence of the fact
secured by opening the trunk with a key obtained by forci-
ble search of his person without a warrant. In the case at
bar it is conceded that Captain Brockus had no warrant ac-
cusing defendant of any crime; that no offense had been
committed in his presence; and that he had no shadow of
authority to enter defendant's home, or castle, in search of
liquor or other property. Our cases, *State* v. *Sutter,* 71 W.
Va. 371, and *State* v. *Edwards,* 51 W. Va. 220, are not in-

consistent with these federal decisions, when considered in connection with the facts which distinguish them. Our conclusion is: First, that defendant was entitled to the return of the one pint of liquor, if not moonshine liquor, which he could not lawfully possess, as well as the quart of red whiskey ordered returned to his attorney, and that the same was acquired by an unlawful and unreasonable search of his premises; Second, that having so acquired the liquor through the agency of its officers, the State could not make use thereof as evidence on the trial, nor of any information acquired by the officers in making such search and seizure.

As a new trial must be awarded the defendant for the errors in the judgment, already disposed of, it becomes necessary to dispose of the questions presented by the rejected plea in bar, and the matters of fact alleged therein. We think the defendant had the right to present by special plea the questions of fact as to his right to immunity from prosecution under the statute, and to have an issue made up thereon, to be tried either by the court or by the jury.

Our statute, section 37 of chapter 32A of the Code, is peremptory, and the special plea invoking its protection, especially with the proposed amendment, fully covers the case. The statute grants immunity if the defendant brings himself fairly under its provisions. To do this he must fully and freely disclose the name or names of any person or persons from whom he received the liquor and give any other information he may have relative to the manufacture and distribution of the same, and truthfully testify as to any such matters of information. It might become a very serious question on the trial of the facts, whether the accused had complied with these requirements. Opinions might differ; for example, as to whether defendant had fully and freely made the disclosure and given the information required, and had truthfully testified as to such matters of information. This could be determined only after hearing his evidence in connection with all the facts and circumstances surrounding his transactions, shown in evidence on the issue or issues presented. The case here is quite distinguishable from a case

depending upon a promise or agreement of immunity by state or federal officers, as a reward for "turning state's evidence," as it is sometimes called, which may require resort to the pardoning power for execution of the agreement, or a case not depending on the facts but presented as a matter of law for the court. The *Whiskey Cases*, 99 U. S. (9 Otto), 594. We think that in a case like the one here, depending on the fact of good faith and truthfulness of the accused, to be determined by his manner of testifying, his demeanor on the witness stand, and all the facts and circumstances, as is usual in such cases, he should, if demanded or not waived, be accorded a jury trial. Such we think is the law of the land. In the case of *Heike* v. *United States*, 217 U. S. 423, a case of immunity provided by a federal statute, such seems to have been the view of the federal supreme court. That case holds that the statute, while not rendering the accused immune from prosecution, does furnish a defense, which if improperly overruled, constitutes a basis for reversal of a final judgment of conviction. In that case the matter of defense was regarded as the subject of a special plea to be tried by the jury. Such being our view of the law and the practice which should be observed in cases of this character, we are of opinion that the court erred in striking out defendant's plea and in denying him the right to amend it as proposed, before submitting the case to the jury, and in refusing to accept and receive his evidence under the plea, as proposed by him on his trial.

Wherefore the judgment will be reversed, the verdict set aside, and a new trial will be awarded defendant.

*Reversed and remanded.*