No. 20-0183 – *Cody Ryan Fields v. Ross H. Mellinger, et al.*

**FILED**
**November 18, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Workman, Justice, dissenting:

I fundamentally disagree with the majority's refusal to recognize a private cause of action for damages under article III, section 6 of the West Virginia Constitution. This decision is contrary to the precepts of *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996), and this Court's duty to ensure that the rights granted the citizens of this State under the West Virginia Constitution are upheld. In so doing, the majority has failed to uphold our most cherished law – the West Virginia Constitution. I therefore dissent.

The question certified in this case, whether a private cause of action exists for redress of damages resulting from a violation of article III, section 6 of our Constitution[1] arises from the execution of a search warrant on September 20, 2017, by Jackson County

---

[1] Article III, section 6 of the West Virginia Constitution provides:

> The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, *shall not be violated*. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.

(Emphasis added).

1

Sheriff's Deputy Ross H. Mellinger, among others, at a residence located in Jackson County.[2] Deputy Mellinger encountered the plaintiff, Cody Ryan Fields, who was standing in a detached garage adjacent to the residence with open bay doors. As Deputy Mellinger approached Mr. Fields, Mr. Fields had his hands raised and was bending at the waist to get on the ground. As Mr. Fields was bending down, Deputy Mellinger allegedly struck Mr. Fields in the face with the butt end of a shotgun. Mr. Fields was charged with obstructing an officer and simple possession of a controlled substance.

According to Mr. Fields, Deputy Mellinger, among others, submitted written reports to Jackson County Sheriff Tony Boggs and Katie Franklin, the Jackson County Prosecuting Attorney, to mitigate the alleged excessive force used against him. Mr. Fields claimed that he made repeated attempts to schedule a suppression hearing on the underlying charges, but each time the State's witnesses were unavailable, and finally the charges were dismissed. Mr. Fields also asserted that the Jackson County Commission "implemented customs, policies or official or unofficial acts which led to the injury claimed by Plaintiff and failed to provide reasonable means of supervision of Deputy Mellinger despite having knowledge of his propensity or pattern or practice of violence."

---

[2] The facts are undisputed by the respondents.

Mr. Fields filed a lawsuit in the United States District Court for the Southern District of West Virginia against Deputy Mellinger, Sheriff Boggs, and the Jackson County Commission d/b/a the Jackson County Sheriff's Department (collectively "the respondents") alleging, inter alia, claims for violation of article III, sections 6, 10, and 17 of the West Virginia Constitution.[3] The respondents moved to dismiss which gave rise to the following certified question before the Court: "Does West Virginia recognize a private right of action for monetary damages for violations of Article III, Section 6 of the West Virginia Constitution?"

This Court long ago recognized that our "constitution is the fundamental law by which all people of the state are governed. It is the very genesis of government. Unlike ordinary legislation, a constitution is enacted by the people themselves in their sovereign capacity and is therefore *the paramount law*." *State ex rel. Smith v. Gore*, 150 W. Va. 71, 77, 143 S.E2d 791, 795 (1965) (emphasis added); *Moats v. Cook*, 113 W. Va. 151, 167 S.E.137, 138-39 (1932) ("The Constitution is the supreme law of the land. . . ."). As this Court held in syllabus point three of *State ex rel. Casey v. Pauley*, 158 W. Va. 298, 210 S.E.2d 649 (1975), "[c]ourts are not concerned with the wisdom or expediencies of constitutional provisions, and *the duty of the judiciary is merely to carry out the provisions*

---

[3] Mr. Fields also asserted claims for negligence; battery; excessive force pursuant to 42 U.S.C. § 1983; *Monell* [*v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)] and supervisory liability pursuant to 42 U.S.C. § 1983; and unlawful conspiracy pursuant to 42 U.S.C. §§ 1983 and 1985.

*of the plain language stated in the constitution*." (Emphasis added). Hence, it is the duty of the judicial branch, and more specifically this Court, to uphold the Constitution. *See State ex rel. Richardson v. Cty. Court of Kanawha Cty.*, 138 W. Va. 885, 890, 78 S.E.2d 569, 573 (1953) ("The Constitution represents the sovereign will of the people, and courts must not hesitate when necessary to uphold it.").[4]

Thus, as a means of upholding the West Virginia Constitution, this Court has long held that various private causes of action exist under article III of the West Virginia Constitution beginning with a private cause of action for the state's taking of private property without just compensation. *See* Syl. Pt. 1, *Fox v. Baltimore & O. R. Co.*, 34 W. Va. 466, 12 S.E.757 (1890) ("In an action brought to recover damages under section 9 of article 3 of the constitution, as compensation for permanent injury to real estate by the construction of a railroad upon a street adjacent to such property, it is proper for the owner to bring an action for trespass on the case, and he may count for permanent damages, and recover the same according to the evidence, although, when the injury occurred, he was

---

[4] The respondents' position that legislative authority is required for this Court to establish a constitutional tort and determine the remedies therefor is wholly without merit. The respondents provide no authority for their position because there is none; this Court has never found that the judiciary's ability to enforce constitutional rights and establish remedies for constitutional violations is dependent upon statutory authorization by the Legislature.

4

not in the actual occupancy of the property, but was in constructive possession of the same through his tenant under a lease.").

Next, in *Harrah v. Leverett*, 166 W. Va. 665, 271 S.E.2d 322 (1980), the Court recognized a cause of action for violating article III, section 5 of the West Virginia Constitution, stating that "a person brutalized by state agents while in jail or prison" may be entitled to "[a] civil action in tort[,]" because "Article III, [§]5 of the West Virginia Constitution[] prohibits of cruel and unusual punishment. *Harrah*, 165 W.Va. at 666, 271 S.E.2d at 324, Syl. Pts. 3 & 4, in part. In so doing, we clearly and unequivocally announced that this Court "is dedicated to the preservation of the rights vested in every person by our constitution and the federal constitution. Any attempt by the government to abridge those rights is anathema to us; repeated infractions, despite clear proscriptions by this Court and federal courts, are unforgivable." *Id*. at 681, 271 S.E.2d at 331.

Following *Harrah*, the Court next recognized a cause of action for violating article III, section 10 of the West Virginia Constitution in *Hutchison*. In *Hutchinson*, the Court held in syllabus point two that "[u]nless barred by one of the recognized statutory, constitutional or common law immunities, a private cause of action exists where a municipality or local governmental unit causes injury by denying that person rights that are protected by the Due Process Clause embodied within Article 3, § 10 of the West Virginia Constitution." 198 W. Va. at 144, 479 S.E.2d at 654, Syl. Pt. 2. We further held

5

that in order to prove a claim under article 3, section 10, the Court established "[a]s under [42 U.S.C.] § 1983, the plaintiff must show (1) that there was a constitutional violation, and (2) that the claim is not barred by an applicable immunity." 198 W. Va. at 150, 479 S.E.2d at 660.

Importantly, the Court found that a constitutional tort existed in *Hutchison* without engaging in any lengthy, in-depth analysis of our jurisprudence or that of other jurisdictions. Rather, the Court relied upon its duty to uphold the Constitution, grounding its decision in the very simple notion that a cause of action was the only means of affording citizens a remedy when public servants violate rights guaranteed by our Constitution. As the *Hutchison* Court stated, "[t]here is no dispute among the parties that a private cause of action exists where state government, or its entities, cause injury to a citizen by denying due process. To suggest otherwise, would make our constitutional guarantees of due process an empty illusion."[5] 198 W. Va. at 150, 479 S.E.2d at 660. Moreover, a private

[5]Some federal district courts in West Virginia have relied upon *Hutchison* in recognizing constitutional claims for violations of provisions other than article III, section 10. *Cummings v. City of Wheeling,* No. 5:19CV271, 2019 WL 6609693, at *4 (N.D.W.Va. Dec. 5, 2019) (relying, in part, on *Hutchison* to allow plaintiff's state constitutional claim arising out of officer's handling of a trained police dog during search in which dog bit plaintiff's body causing injury to proceed); *Barcus v. Austin*, No. 1:17CV122, 2018 WL 4183213 at *5 (N.D.W.Va. Aug. 31, 2018) (dismissing plaintiffs' claims under article III, §§ 7, 10 and 11 for failing to plead sufficient facts but recognizing private causes of action for state constitutional violations pursuant to *Hutchison*); *Spry v. West Virginia*, No. 2:16-CV-01785, 2017 WL 440733, at *9 (S.D.W.Va. Feb. 1, 2017) (where a count was alleged for violating West Virginia Constitution article III, section 6, the district court stated that "[g]iven its ruling in *Hutchison*, the Court suspects that the WVSCA would recognize a cause of action for money damages for the violation of other Article III rights[,]" allowing

cause of action is "'the only realistic avenue for vindication of statutory and constitutional guarantees when public servants abuse their offices is an action for damages.' *See* Alan K. Chen, *The Ultimate Standard: Qualified Immunity in the Age of Constitutional Balancing Tests*, 81 Iowa L. Rev. 261 (1995)." 198 W. Va. at 148, 479 S.E.2d at 658.

In the instant case, this Court should easily have recognized a private cause of action for the alleged violation of article III, section 6 based upon our precedents. This extension of our law would have been incremental, logical, and predictable, and would have given the citizens of our State a means of protecting the rights afforded to them by the West Virginia Constitution.

Looking beyond this Court's precedents, an examination of federal and state law in other jurisdictions lends further support for recognizing a private constitutional cause of action; quite frankly, the idea that such a cause of action may be necessary to vindicate a violation of a person's constitutional rights by a public servant is not novel. Going back to *Marbury v. Madison*, 5 U.S. 137 (1803), there has been widespread

---

state constitutional claim for unlawful entry to proceed); *Ray v. Cutlip*, No. 2:13-CV-75, 2014 WL 858736, at *3 n.1 (N.D.W.Va. Mar. 5, 2014) (recognizing state constitutional claim based upon use of excessive force, stating that, based on *Hutchison*, "West Virginia recognizes a private right of action for violations of the West Virginia Constitution."); *see also Wood v. Harshbarger*, No. 3:13-21079, 2013 WL 5603243 at *6-8 (S.D. W. Va. Oct. 11, 2013) (relying on *Harrah* and finding plaintiff had alleged sufficient facts to state a constitutional claim to be free from cruel and unusual punishment under West Virginia Constitution article III, section 5).

recognition that "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Id*. at 163; *see also Owen v. City of Independence, Mo.*, 445 U.S. 622, 651 (1980) ("How 'uniquely amiss' it would be . . . if the government itself—'the social organ to which all in our society look for the promotion of liberty, justice, fair and equal treatment, and the setting of worthy norms and goals for social conduct'—were permitted to disavow liability for the injury it has begotten.") (citation omitted).

Almost fifty years ago, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Supreme Court first recognized a direct cause of action for damages under the Fourth Amendment to the United States Constitution. In *Bivens*, agents with the Federal Bureau of Narcotics made a warrantless entry into the petitioner's apartment, searched the apartment, and arrested him on narcotics charges. *Id*. at 389. The petitioner instituted a civil action in federal court alleging that both the search and his arrest were effected without a warrant and without probable cause in violation of the Fourth Amendment, and that unreasonable force was used against him during the arrest. *Id*. He claimed damages for humiliation, embarrassment and mental suffering as a result of the agents' conduct. The district court dismissed his action on the ground, inter alia, that he failed to state a cause of action. *Id*. at 390. The dismissal was affirmed on appeal and the Supreme Court granted certiorari. *Id*.

In reversing the dismissal of the petitioner's complaint for failure to state a cause of action, the Supreme Court rejected the respondents' contention that because he had state tort remedies available, i.e., trespass and invasion of privacy, there was no need to recognize a federal cause of action to vindicate his constitutional rights. The Court reasoned:

> Respondents seek to treat the relationship between a citizen and a federal agent unconstitutionally exercising his authority as no different from the relationship between two private citizens. *In so doing, they ignore the fact that power, once granted, does not disappear like a magic gift when it is wrongfully used.* An agent acting—albeit unconstitutionally—in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own. *Accordingly, as our cases make clear, the Fourth Amendment operates as a limitation upon the exercise of federal power regardless of whether the State in whose jurisdiction that power is exercised would prohibit or penalize the identical act if engaged in by a private citizen. It guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority. And["]where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.["]*

*Id*. at 391-92 (emphasis added) (citations omitted).

In a similar vein, the Supreme Court dismissed the idea that an enabling statute was a prerequisite to its recognition of the private cause of action, stating that it found "no explicit congressional declaration that persons injured by a federal officer's

9

violation of the Fourth Amendment may not recover money damages from the agents, but must be remitted to another remedy, equally effective in the view of Congress." *Id*. at 397. Instead, the Court opined that

> [t]he question is merely whether petitioner, if he can demonstrate an injury consequent upon the violation by federal agents of his Fourth Amendment rights, is entitled to redress his injury through a particular remedial mechanism normally available in the federal courts. *Cf. J. I. Case Co. v. Borak*, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964); *Jacobs v. United States*, 290 U.S. 13, 16, 54 S.Ct. 26, 27-28, 78 L.Ed. 142 (1933). 'The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.' *Marbury v. Madison*, 1 Cranch 137, 163, 2 L.Ed. 60 (1803).

403 U.S. at 397.

Thus, in the case sub judice, this Court should have easily recognized a private cause of action under our State Constitution for a violation of article III, section 6,[6] following the analysis of the Supreme Court in *Bivens*. Persuasive authority for such a cause of action does not end with *Bivens*, however, because other state supreme courts have similarly recognized this type of remedy for search and seizure violations. For example,

---

[6] *See State v. Duvernoy*, 156 W. Va. 578, 582, 195 S.E2d 631, 634 (1973) ("The language of Article III, Section 6 of the West Virginia Constitution is very similar to the Fourth Amendment to the Constitution of the United States. *State v. Massie*, 95 W.Va. 233, 120 S.E. 514 [(1923)]. This Court has traditionally construed Article III, Section 6 in harmony with the Fourth Amendment. *State v. Andrews*, 91 W.Va. 720, pt. 2 Syl., 114 S.E. 257 [(1922)].").

in *Brown v. State*, 674 N.E.2d 1129 (N.Y. 1996), the Court of Appeals of New York found

that a cause of action existed for alleged violations of the equal protection and search and

seizure provisions of the New York Constitution. *Id*. at 1131. The plaintiffs in *Brown* were

a class of "nonwhite males" who were stopped and questioned by police officers in

Oneonta, New York, over a five-day period in 1992, while the officers investigated an

attack of a seventy-seven-year-old white woman. The victim described her assailant as a

black male. Because authorities were unable to identify a suspect based upon such cursory

information, they first obtained a computer-generated list of all African American men

attending the nearby State University and began systematically questioning each individual

on the list. *Id*. at 1131-32. When these efforts failed to identify a suspect, law enforcement

officers began a five-day "'street sweep'" in which every "nonwhite male" found in the

city was stopped and interrogated. *Id*. at 1132. No one was arrested for the crime. *Id*.

In concluding that such conduct on the part of law enforcement gave rise to

a private cause of action, the New York high court reasoned, in part:

> Claimants alleged that the defendant's officers and employees
> deprived them of the right to be free from unlawful police
> conduct violating the Search and Seizure Clause and that they
> were treated discriminatorily in violation of the State Equal
> Protection Clause. The harm they assert was visited on them
> was well within the contemplation of the framers when these
> provisions were enacted for fewer matters have caused greater
> concern throughout history than intrusions on personal liberty
> arising from the abuse of police power. Manifestly, these
> sections were designed to prevent such abuses and protect
> those in claimants' position. A damage remedy in favor of

those harmed by police abuses is appropriate and in furtherance of the purpose underlying the sections.

. . . .

Damages are a necessary deterrent for such misconduct. . . . For those in claimants' position "it is damages or nothing" (*see*, *Bivens*, 403 U.S., at 410, 91 S.Ct., at 2012, *supra* [Harlan, J., concurring]). The damage remedy has been recognized historically as the appropriate remedy for the invasion of personal interests in liberty, indeed, damage remedies already exist for similar violations of the Federal Constitution. Those created by Congress and the Supreme Court, however, fail to reach State action though it is on the local level that most law enforcement functions are performed and the greatest danger of official misconduct exists. . . .

*Brown*, 674 N.E.2d at 1140-41.

Likewise, in *Dorwart v. Caraway*, 58 P.3d 128 (Mont. 2002), the Supreme Court of Montana recognized a private cause of action for violations of the Montana Constitution. In *Dorwart*, the plaintiffs alleged that two deputy sheriffs unlawfully entered a home where they conducted a warrantless, unlawful and unreasonable search and seizure of the property, trespassed, invaded plaintiffs' privacy, and wrongfully converted certain items of their property, all in violation of Montana's constitutional provisions concerning right to privacy, right to be free from unreasonable searches and seizure, and right to due process of law. *Id*. at 131.

In its determination that a violation of rights guaranteed by the Montana Constitution give rise to a cause of action for damages, the *Dorwart* court first recognized that "[b]y 1998, twenty-one states had recognized an implied cause of action for state constitutional violations." *Id*. at 133. The court then examined the reasoning of the Supreme Court in *Bivens*, discussed *supra* in greater detail, and the general principle set forth in the Restatement (Second) of Torts § 874A (1979):

> When a legislative provision[7] protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

58 P.3d at 135. (footnote added). The Supreme Court of Montana then concluded "that the *Bivens* line of authority buttressed by § 874A of the Restatement (Second) of Torts are sound reasons for applying a cause of action for money damages for violations of those self-executing provisions of the Montana Constitution." *Id*. at 136. The court further found that "[c]ommon law causes of action intended to regulate relationships among and between individuals are not adequate to redress the type of damage caused by the invasion of constitutional rights." *Id*. at 137.

---

[7] Section 874A, comment a, of the Restatement, *supra*, makes clear that the term "legislative provision" includes a constitutional provision.

More recently, in *Zullo v. State*, 205 A.3d 466 (Vt. 2019), the Supreme Court of Vermont recognized, as a matter of first impression, that a direct private cause of action for money damages exists for violations of Vermont's constitutional search and seizure provision. In *Zullo*, the plaintiff alleged that a state trooper had violated his constitutional rights by stopping him without reasonable suspicion of any traffic violation, causing him to exit his vehicle without any reasonable suspicion of danger or the commission of a crime, seizing his car without probable cause, and searching his car without probable cause. *Id.* at 474-75.

The Vermont high court undertook an analysis of whether the constitutional provision at issue was self-executing, meaning that the right did not "'need further legislative action to become operative[,]'" and whether an alternative remedy was already available to address the injuries caused by the violation of constitutional rights. *Id.* at 484. The court first found that the constitutional provision prohibiting unwarranted searches and seizures was self-executing, and also concluded that "[t]he standard remedy for . . . [a] violation in a criminal context—the exclusionary rule—provides no relief to the instant plaintiff, who was not charged with a crime." *Id.* The court further rejected the State's argument that other alternative remedies, including an action against the officer pursuant to 42 U.S.C. § 1983, injunctive relief, or administrative relief, provided "meaningful redress to plaintiff for the constitutional transgression he alleges." *Zullo*, 205 A.3d at 485. Instead, the *Zullo* court concluded that

> In sum, none of the alternative remedies proffered by the State can substitute as a viable remedy for someone subjected to an allegedly unconstitutional search or seizure, most particularly in a case like this where plaintiff was not charged with a crime. In addition to providing a compensatory remedy for particular individuals whose constitutional rights have been violated by state officials, the adjudication of constitutional torts has played a critical role in establishing specific constitutional limits on governmental power in a way that could not be provided by injunctive relief or common law actions.

*Id*. at 488; *see Binette v. Sabo*, 710 A.2d 688, 700-01 (Conn. 1998) ("In recognizing the existence of a damages action in the present case, we, like the United States Supreme Court in *Bivens*, reject an unduly restrictive application of our most fundamental constitutional guarantees. Endorsing the rationale underlying *Bivens*, we decline, as a matter of policy, to treat the harm that results from the abuse of governmental power as equivalent to that which arises from the commission of a battery or trespass by a private citizen. In the absence of compelling countervailing considerations, we believe that a state *Bivens*-type action is an appropriate remedy for the unique harm likely to result from a violation of [Connecticut's constitutional provisions pertaining to unreasonable searches and seizures and unlawful arrests] . . . because, unlike the other remedies available to the plaintiffs, a *Bivens*-type remedy comprehends both the fundamental nature of the rights protected by those constitutional provisions and the special significance of the duty breached by their violation. We conclude, therefore, that the plaintiffs have alleged cognizable claims under the Connecticut constitution.") (footnote omitted); *Moresi v. State ex rel. Dep't of Wildlife and Fisheries*, 567 So.2d 1081, 1093 (La. 1990) (recognizing "that damages may be obtained by an individual for injuries or loss caused by a violation of Article I, § 5 of the

15

1974 Louisiana Constitution [pertaining to unconstitutional arrests and searches and seizures]"); *Widgeon v. E. Shore Hosp. Ctr.*, 479 A.2d 921, 930 (Md. 1984) (finding that private cause of action for damages exists for violation of articles of Maryland's Declaration of Rights concerning searches and seizures, and deprivation of liberty, life and property); *see also Godfrey v. State*, 898 N.W.2d 844, 871 and 873 (Iowa 2017) (recognizing existence of constitutional tort claim for monetary damages for equal protection and due process violations); *Strauss v. State*, 330 A.2d 646, 650 (N.J. Sup. Ct. Law Div. 1971) (recognizing plaintiff's cause of action for violation of his constitutional right to due process); *Old Tuckaway Assocs. Ltd P'ship v. City of Greenfield*, 509 N.W.2d 323, 328 n.4 (Wis. Ct. App. 1993) (acknowledging that the Wisconsin Supreme Court had not yet recognized a direct action based upon an intentional violation of state constitution's due process provision, but allowing claim to go forward).

In summary, the majority, relying upon this Court's precedent, as well as legal authority from the United States Supreme Court and many other state courts, should have recognized a private cause of action for damages to redress a violation of West Virginia Constitution article III, section 6. This type of action is necessary to enforce West Virginia's citizens' constitutional rights and to ensure the government's responsibility to provide and to protect those rights from governmental wrongdoing or deprivation. As the Supreme Court eloquently stated in *Owen*, "A damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees, and

16

the importance of assuring its efficacy is only accentuated when the wrongdoer is the institution that has been established to protect the very rights it has transgressed."  445 U.S. at 651.

For the foregoing reasons, I dissent.