No. 86-60

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

DALLAS JOHNSON,

       Plaintiff and Respondent,

-vs-

BOZEMAN SCHOOL DISTRICT NO. 7,

       Defendant and Appellant,

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        White & Seel; Donald E. White, Bozeman, Montana

    For Respondent:

        Kirwan & Barrett; Peter M. Kirwan, Bozeman, Montana

Submitted on Briefs: Nov. 21, 1986

Decided: March 18, 1987

Filed: MAR 1 8 1987

*Ethel M. Harrison*
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Bozeman School District No. 7 appeals a September 30, 1985, order of the Eighteenth Judicial District Court, Gallatin County. The order affirmed a Human Rights Commission determination that Dallas Johnson was unlawfully discriminated against by the School District on the basis of marital status. Johnson cross-appeals that part of the order which denied him tenure, attorney fees, and the right to have his damages recalculated.

The School District raises two issues for our review:

1. Did the Human Rights Commission and the District Court err in finding that the School District discriminated against Johnson on the basis of his marital status?

2. Did the Human Rights Commission and the District Court err by failing to find that Johnson's claim is barred by laches?

Johnson raises three additional issues:

3. Did the Human Rights Commission abuse its discretion by failing to award Johnson tenure with the School District?

4. Did the Human Rights Commission abuse its discretion by failing to exclude Johnson's summer earnings from its calculation?

5. Did the District Court abuse its discretion by failing to award Johnson his reasonable attorney fees?

We reverse on Issue 1, which renders moot Issues 2, 3, 4 and 5.

In June 1975, Dallas Johnson applied for a position as a physical science teacher at Bozeman Junior High within School District No. 7 (School District). Johnson has a Bachelor's degree from Montana State University and a

Secondary Teacher's Certificate. Johnson's wife was a teacher at Bozeman Junior High. At the time of Johnson's application, the School District had a policy in effect which prohibited persons of the same immediate family from teaching in the same school. Johnson was unaware of this policy at the time he applied with the School District. At the outset, we note that the School District properly abandoned this policy in 1981.

Donovan Miller was the personnel director for the School District from 1975 to 1980. Part of his job involved screening all applications for teaching in the School District. His procedure was to review the applications, assign each one a numerical rating, and then send those applications with the highest ratings to the principal of the school where an opening existed. The applicants were rated on a scale from "one to five;" a rating of "one" was superior and a rating of "five" was poor. Johnson's application was rated along with a large number of other applicants for the teaching position at Bozeman Junior High. Johnson was rated at "four." The other applicants all had higher ratings than Johnson.

The School District had never hired any one rated less than "two." Miller's policy was to send only those applications rated a "one" or "two" to the particular principal for review. However, the principal doing the interviewing could request a particular application from Miller.

Francis Olson was the principal at Bozeman Junior High from 1967 to 1981. He was familiar with Johnson because Johnson had student-taught at the junior high. Soon after Johnson applied for the teaching position, he contacted Olson to ask whether Olson had received Johnson's application. Since Olson had not yet received it, Olson called Miller to inquire about the application. Olson requested that

Johnson's file be forwarded to him for review. Miller did not refer to Johnson's low rating, but only told Olson that he would not send the application because the School District's policy prohibited Johnson's employment at Bozeman Junior High, since Johnson's wife was already employed there. Shortly thereafter, Olson told Johnson what Miller had said.

On July 18, 1975, Johnson filed a complaint with the Human Rights Commission alleging that the School District violated § 49-2-303, MCA, by discriminating against him on the basis of his marital status. On June 21, 1976, and on December 19, 1979, he filed additional amended complaints with the Commission alleging the same violations as were alleged in his initial complaint. However, the Commission was unable to conduct an investigation on the matter until October 1979 because of the pendency of an action brought by the School District against the Commission.

On December 17, 1980, the Human Rights Commission issued a reasonable cause finding, and on May 18, 1982, a hearing was held before an examiner appointed by the Commission. The hearing examiner found that the School District had unlawfully discriminated against Johnson on the basis of marital status, and ordered the School District to offer Johnson the next available teaching position in the system. Additionally, the examiner awarded Johnson "back pay and front pay." On March 31, 1983, the case was heard before the Human Rights Commission. It affirmed the findings and proposed order of the hearing examiner. Johnson was awarded all rights and privileges that would have accrued by reason of employment with the School District since 1975, with the exception of tenure. The award of "back pay and front pay" was offset by the amount that Johnson had actually earned since 1975. The School District then filed a petition for judicial review with the District Court. On September 30,

1985, the District Court affirmed the decision of the Human Rights Commission. Both parties have appealed the judgment of the District Court.

Issue 1

Did the Human Rights Commission and the District Court err in finding that the School District discriminated against Johnson on the basis of his marital status?

At the time Johnson applied for a teaching position with the School District, the School District had a policy in effect which prevented spouses from teaching in the same school. The Human Rights Commission ultimately concluded that Johnson was qualified for the teaching position he applied for and was prevented from consideration because of the anti-nepotism policy. It also concluded that Johnson had been unlawfully discriminated against, in violation of § 49-2-303(1)(a), MCA, which provides:

> It is an unlawful discriminatory prac-
> tice for . . . an employer to refuse
> employment to a person, to bar him from
> employment, or to discriminate against
> him in compensation or in a term, condi-
> tion, or privilege of employment because
> of his . . . marital status . . . [Em-
> phasis added.]

The Commission's findings of fact are subject to the judicial standard of review set forth in § 2-4-704(2), MCA, which states in relevant part:

> The court may not substitute its judg-
> ment for that of the agency as to the
> weight of the evidence on questions of
> fact. The court may affirm the decision
> of the agency or remand the case for
> further proceedings. The court may
> reverse or modify the decision if sub-
> stantial rights of the appellant have
> been prejudiced because the administra-

5

> tive findings, inferences, <u>conclusions</u>,
> or decisions <u>are</u>:
>
> . . .
>
> (d) <u>affected</u> <u>by</u> <u>other</u> <u>error</u> <u>of</u> <u>law</u>;
>
> (e) clearly erroneous in view of the
> reliable, probative, and substantial
> evidence on the whole record; [Emphasis
> added.]

Findings of fact by an administrative agency are subject to the "clearly erroneous" standard of review. However, conclusions of law are subject to the "abuse of discretion" standard of review, where the scope is broader. "These standards differ due to the agency's expertise regarding the facts involved and the court's expertise in interpreting and applying the law." City of Billings v. Billings Firefighters (Mont. 1982), 651 P.2d 627, 632, 39 St.Rep. 1844, 1849. We will therefore review the conclusions of law of the Human Rights Commission and the District Court, utilizing the standard of § 2-4-704(2)(d), MCA.

The School District contends, as it has since the initial proceedings, that Johnson was screened out by the rating system. The District asserts that Johnson was not hired because his credentials were far inferior to those of every other applicant. Thus, the marital policy was never brought into effect. The School District also contends that the Human Rights Commission and the District Court erred by not applying the proper test for the allocation of the burden of proof.

Johnson contends that he called Miller to request that his application be forwarded to Olson. Johnson asserts that Miller said Johnson could not be considered for the teaching position, because his wife was a teacher at that school, and his employment would be contrary to the District's policy.

6

Under the second stage of the McDonnell Douglas test, if the plaintiff has established his prima facie case, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 678. The burden on the employer at this stage is merely one of production, not persuasion. "The defendant need not persuade the court that it was actually motivated by the proffered reasons [citation omitted]. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dept. of Community Affairs v. Burdine (1981), 450 U.S. 248, 254-255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216 (explaining McDonnell Douglas). If the employer is able to demonstrate a legitimate, nondiscriminatory reason for not hiring the complainant, even though that may not have been the actual reason for the rejection, then the plaintiff's prima facie case of discrimination is rebutted.

Under the third stage, if the plaintiff's prima facie case is rebutted, he then has an opportunity to prove, by a preponderance of the evidence, that the legitimate reasons offered by the employer are only a pretext for discrimination. McDonnell Douglas, 411 U.S. at 805, 93 S.Ct. at 1826, 36 L.Ed.2d at 679. "This burden now merges with the ultimate burden of persuading the court that [plaintiff] has been the victim of intentional discrimination." Texas Dept. of Community Affairs, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217.

We have consistently used the McDonnell Douglas test as the appropriate method of proving an employment discrimination claim. European Health Spa v. Human Rights Comm'n (Mont. 1984), 687 P.2d 1029, 1032, 41 St.Rep. 1766, 1769; Martinez v. Yellowstone County Welfare Dept. (Mont. 1981),

8

626 P.2d 242, 246, 38 St.Rep. 474, 477. We note that the School District's policy, when based on marital status, was discriminatory on its face. In Thompson v. Board of Trustees, Sch. Dist., Etc. (Mont. 1981), 627 P.2d 1229, 1231, 38 St.Rep. 706, 709, we held that § 49-2-303(1)(a), MCA, is a "strongly worded directive from the legislature prohibiting employment discrimination and encouraging public employers to hire, promote, and dismiss employees solely on merit."

However, Johnson never reached the protection afforded by § 49-2-303(1)(a), MCA, because his qualifications never reached the minimum hiring standard used by the School District. The record reveals that the School District had never hired anyone with a three, four or five rating. Johnson's rating of four was based on poor college grades, supervisors' poor recommendations and inferior experience. He was under-qualified in contrast to the other applicants. Under the McDonnell Douglas test, Johnson needed to show that he was in a position to be considered for employment before he could invoke the protection of § 49-2-303(1)(a).

Johnson failed to prove that his marital status was the substantial factor in his rejection. On the contrary, the District Court stated in its order: "The school district did present credible evidence of a nondiscriminatory reason for not hiring Mr. Johnson (inferior qualifications and credentials) . . ." In addition, the Human Rights Commission found that Johnson had the poorest credentials of any applicant for the position. The record reveals that the School District's substantial and motivating factor in Johnson's rejection was his rating of "four," and not his marital status. As the School Superintendent testified: "[Johnson] was screened out by his rating before you would even consider the nepotism policy. Even if the policy hadn't existed, obviously he would have been screened out." Under the test of

McDonnell Douglas, the key element of a plaintiff's prima facie case is his qualifications for the job. Without adequate qualifications, the analysis ends. The bare fact that Johnson had a teaching degree and certificate is not enough to automatically place him in the pool of acceptable applicants, under the criteria established by the School District. Other factors, such as grades and recommendations, played a large role in determining the qualifications of an applicant. The Bozeman School District set a qualification standard which Johnson failed to reach. Johnson has failed to establish the "qualified" element of his prima facie case, thereby precluding the need for the School District to rebut his evidence.

If, arguendo, Johnson had established his prima facie case, the School District in stage two of the McDonnell Douglas test produced enough evidence to raise a genuine issue of fact; thereby rebutting Johnson's prima facie case of discrimination, and carrying the analysis to the third stage of the test. At the third stage, Johnson must prove, by a preponderance of the evidence, that the reasons offered by the School District for his rejection are merely a pretext for discrimination. However, Johnson's claim also fails at this stage because the District Court's order, in discussing Johnson's rejection, stated: "this was not a mere pretext for hiring someone else."

We cannot allow Johnson's marital status to secure what his qualifications could not. As we held in Snell, 198 Mont. at 69, 643 P.2d at 848, "this Court has a responsibility to the employer as well as to the employee. Part of that responsibility consists in requiring adequate credible evidence of discrimination before subjecting an employer to the penalties associated with a finding of discrimination."

We hold that <u>McDonnell Douglas</u> defines the appropriate test in this case. However, both the Human Rights Commission and the District Court failed to apply the <u>McDonnell Douglas</u> test to the facts. Both failed to cite <u>McDonnell Douglas</u> in their orders. Therefore, their conclusions that Dallas Johnson was discriminated against, on the basis of marital status, is an error of law. Under the standard of review of § 2-4-704(2)(d), MCA, we reverse on this issue, which renders the remaining issues moot.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices

11

Thus, the parties have framed the question: "Which factor was primary in the rejection of Johnson's application --his rating or his marital status?" Before we can determine whether the ultimate conclusion of the Human Rights Commission is an error of law, we will first address the proper allocation of proof and the evidentiary burden placed upon the respective parties in an employment discrimination case.

We have held that reference to federal case law is both appropriate and helpful in employment discrimination cases filed under the Montana Human Rights Act, Title 49, MCA, because they closely parallel those of Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. Snell v. Montana-Dakota Utilities Co. (1982), 198 Mont. 56, 62, 643 P.2d 841, 844.

In order to aid plaintiffs in proving their claims of employment discrimination, the United States Supreme Court articulated a three-stage test, which employs shifting burdens of proof. McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (employer rejected the re-employment application of a black civil rights activist).

Under the first stage of the McDonnell Douglas test, the plaintiff bears the burden of establishing a prima facie case of discrimination. He must show the following:

(1) that he is a member of a protected class;

(2) that he applied for and was qualified for the job;

(3) that despite his qualifications he was rejected; and

(4) that, after his rejection, the position remained open and the employer continued to seek applications from persons of the complainant's qualifications.

This prima facie case creates a rebuttable presumption of discrimination.

7